609 F.2d 949
 GOOD SAMARITAN HOSPITAL, CORVALLIS, Plaintiff-Appellant,
v.
F. David MATHEWS, Secretary of Health, Education and Welfare
of the United States of America, Blue Cross
Association and Northwest Hospital
Service, dba Blue Cross of
Oregon, Defendants-Appellees.
 No. 77-3308.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 13, 1979.
 
 Robert G. Simpson, Spaulding, Portland, Or., on brief; Ridgway K. Foley, Jr., Southern, Spaulding, Kinsey, Williamson & Schwabe, Portland, Or., for plaintiff-appellant.
 Jack G. Collins, Asst. U. S. Atty., Portland, Or., James C. Pyles, Baltimore, Md., on brief; Raenele C otee, Dept. HEW, Baltimore, Md., for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before COWEN,* Court of Claims Judge, and KILKENNY and HUG, Circuit Judges.
 KILKENNY, Circuit Judge:
 
 
 1
 Appellant (Good Sam), the plaintiff below, appeals from a judgment dismissing its claim in an action prosecuted under the provisions of Title XVIII of the Social Security Act and related statutory provisions. The controversy grows out of a claim filed by Good Sam against appellee Blue Cross of Oregon (Blue Cross) for reimbursement of interest on construction loans as a current expense item under the Medicare Act, 42 U.S.C. § 1395, Et seq. (1970). In general, the controversy presents the question of whether interest costs incurred by Good Sam during the period of its new hospital construction in 1973 and 1974 should be considered as a current expense and therefore currently deductible, or should be capitalized and amortized over the years of the estimated life of the new facility.
 
 
 2
 Following denial of the claim, Good Sam filed a request for a hearing before the Provider Reimbursement Review Board (PRRB), the agency designated to hear Medicare disputes. The PRRB denied the claim. Good Sam, pursuant to the provisions of 42 U.S.C. § 1395Oo (f), filed a claim in the district court seeking review of the PRRB decision. Named as defendants in this action were the Secretary of Health, Education and Welfare, Blue Cross Association, and Northwest Hospital Service, dba Blue Cross of Oregon. The magistrate before whom the case was tried recommended the denial of appellant's and the granting of appellees' motion for summary judgment. On a full De novo review of the contested issues, the district judge followed the magistrate's recommendations and held for the appellees. Good Sam appeals. We affirm.
 
 ISSUES PRESENTED
 I.
 
 3
 Whether Section 206 of the Provider Reimbursement Manual and Intermediary Letter No. 51 are exempt from the rulemaking requirements of the Administrative Procedure Act under the benefit exception contained in 5 U.S.C. § 553(a)(2).
 
 II.
 
 4
 Whether Section 206 of the Provider Reimbursement Manual and Intermediary Letter No. 51 are interpretive rules and, therefore, exempt from the rulemaking requirements of the Administrative Procedure Act under 5 U.S.C. § 553(b)(A).
 
 III.
 
 5
 Whether Section 206 of the Provider Reimbursement Manual and Intermediary Letter No. 51 are consistent with the Medicare statutes and regulations.
 
 STANDARDS ON AGENCY APPEALS
 
 6
 Inasmuch as the proceeding before the district court consisted of a review of the PRRB decision, we treat the findings of the magistrate and the district court's review and approval of those findings as subject to the rules on agency appeals contained in Chapter 7 of Title V of the United States Code as required by 42 U.S.C. § 1395Oo (f).
 
 
 7
 The standard of review in 5 U.S.C. § 706 frees the reviewing court of the time consuming and difficult task of weighing evidence, gives proper respect to the expertise of the administrative tribunal and helps promote uniform application of the statute. Consolo v. Federal Maritime Commission,383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). The review is not a determination of whether there is any genuine issue as to any material fact as in a ruling on a summary judgment motion, but rather whether the agency action was arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole. 5 U.S.C. § 706(2).
 
 STATEMENT
 
 8
 The material facts are not in dispute. Appellant Good Sam, an Oregon nonprofit corporation, operates the Good Samaritan Hospital in Corvallis, Oregon. The Secretary of HEW has the responsibility for the administration of the Medicare Act. Appellee Blue Cross, under contract with HEW, computes and distributes payments to providers of health care services under the Medicare program. 42 U.S.C. § 1395h. Northwest Hospital Service administers the local Blue Cross plan. Good Sam is a provider of services within the meaning of the Act.
 
 
 9
 Blue Cross acts as a fiscal intermediary and distributes the trust funds of the Medicare program to providers of services to program beneficiaries. Estimated payments are made to providers periodically during the year with a final determination of the reimbursable costs made after the provider files a cost report at the end of its fiscal year. Blue Cross performs any necessary investigation and then makes a determination of the "reasonable costs" of covered services for which the provider is entitled to reimbursement. If the provider is not satisfied with that determination, it may request a hearing before the PRRB. 42 U.S.C. § 1395Oo . Judicial review is available in the United States District Court pursuant to 42 U.S.C. § 1395Oo (f).
 
 
 10
 In 1973, Good Sam began construction of a new 166-bed replacement hospital for its out-dated facility. The hospital was completed in 1975 and occupied on December 1st of that year. All patients were moved from the old to the new facility in one day. To finance the project, Good Sam entered into two mortgage agreements totalling approximately $8,500,000.00. Interest payments on construction advances amounted to $29,803.00 in 1973 and $178,743.00 in 1974. Good Sam filed the Medicare cost reports for both 1973 and 1974. Interest costs on construction loans are reimbursable under the Medicare plan. 20 C.F.R. §§ 405.419(a) and (b)(2).
 
 
 11
 The dispute here is over whether interest costs incurred by a provider of services while construction of a new facility is in progress may be included as an allowable cost in the current year, or must be capitalized as part of the new facility. If the interest costs may be included, Good Sam is entitled to current reimbursement. If they must be capitalized, reimbursement can only occur over the life of the hospital.
 
 
 12
 Blue Cross determined that the costs could not be expensed, but rather must be capitalized. On October 23, 1975, Blue Cross demanded payment of $69,941.50 from Good Sam, and Blue Cross thereafter began withholding portions of that amount from Good Sam's weekly interim Medicare payments for current reimbursable costs. On January 16, 1976, Good Sam requested a hearing before the PRRB.
 
 
 13
 The PRRB upheld the action taken by Northwest Hospital Service dba Blue Cross, finding: (1) that Section 206 of the Provider Reimbursement Manual issued in 1968 and Intermediary Letter No. 51 issued in 1966 were interpretive clarifications of the reimbursement regulations; (2) that 42 C.F.R. § 405.406(a) directed that widely accepted accounting practices in the hospital industry be followed; (3) that capitalization of construction loan interest is the standard hospital industry practice; and (4) that a pertinent federal district court decision, St. Francis Hospital v. Weinberger, 413 F.Supp. 323 (N.D.Cal.1975), cited by the hospital in support of its contentions was inapplicable since the construction project considered therein began prior to the Medicare program, and requiring capitalization of the construction loan interest there involved inequitable retroactivity not present in the instant controversy.
 
 I.
 
 14
 The threshold issue is whether Section 206 of the Provider Reimbursement Manual and Intermediary Letter No. 51 are exempt from the rulemaking requirements under the benefit exception provided for in 5 U.S.C. § 553(a)(2). These instruments require capitalization of interest costs incurred during construction of a new facility. Item # 6 of the letter reads:
 
 
 15
 "Question: May the interest during construction of an asset be expensed?
 
 
 16
 Answer: No. Interest during construction should be capitalized. However, when the asset is completed and in use, the interest on the liability may be expensed."
 
 Section 206 provides:
 
 17
 "Interest During Period of Construction
 
 
 18
 Frequently, providers may borrow funds to construct facilities or to enlarge existing facilities. Usually, construction of facilities will extend over a long period of time, during which interest costs on the loan are incurred. Interest costs incurred during the period of construction must be capitalized as a part of the cost of the facility. The period of construction is considered to extend to the date the facility is put into use for patient care.
 
 
 19
 If the construction is an addition to any existing facility, interest incurred during the construction period on funds borrowed to construct the addition must be capitalized as a cost of the addition. After the construction period, interest on the loan is allowable, as an operating cost."Good Sam challenges the procedures used to promulgate Section 206 and Letter No. 51. It argues that the promulgation of both violated the Administrative Procedure Act's rulemaking provisions, 5 U.S.C. § 553.
 
 
 20
 The APA's rulemaking provisions require agencies and departments to give notice and to afford opportunity for comment by interested persons before rules are promulgated. It is not disputed that the Secretary of HEW did not adhere to the APA's notice and comment provisions in issuing Letter No. 51 and Section 206. Consequently, the validity of the rules depends on the applicability of one of the exceptions to the normal rulemaking procedures.
 
 
 21
 The above mentioned rulemaking requirements do not apply "to the extent that there is involved . . . (2) a matter relating to agency management or personnel or to public property, loans, grants, Benefits, or contracts." (Emphasis supplied.) 5 U.S.C. § 553(a)(2). In addition, notice and hearing are not required "to (issue) Interpretive rules, general statements of policy, or rules of agency organization, procedure or practice; . . ." (Emphasis supplied.) 5 U.S.C. § 553(b)(A).
 
 THE BENEFIT EXCEPTION
 
 22
 The magistrate held and the district court agreed that the benefit exception to the rulemaking procedures was applicable to the instant case. Good Sam argues that the benefit exception is inapplicable because Section 206 relates to the Medicare Act which is an insurance program and does not relate to benefits. It further contends that even if Medicare benefits aged citizens, it is not a benefit program as to providers of services.
 
 
 23
 Appellees cite Humana of South Carolina, Inc. v. Califano, 191 U.S.App.D.C. 368, 590 F.2d 1070 (D.C.Cir.1978), a well reasoned concurring authority on this issue. There, a hospital challenged a Medicare regulation limiting the rate of return on equity capital recoverable as a cost item. After noting that courts should only reluctantly recognize exemptions from the public comment provisions because of the proven value of the requirements, the Humana court concluded that "Section 553(a)(2) cuts a wide swath through the safeguards generally imposed on agency action.", and that the statutory exemption still prevails "when 'grants,' 'benefits' or other named subjects are 'clearly and directly' implicated." Humana, supra, 191 U.S.App.D.C. at 380, 590 F.2d at 1082. The court went on to say:
 
 
 24
 "Regulations governing the amount of reimbursement allocable to providers, then, plainly implicate administration of Medicare funds. The extent to which providers incidentally benefit from participation in the program may be somewhat uncertain. But, as the District Court observed, rules 'establishing a reimbursement formula for payments to organizations in order that they actually deliver . . . benefits (to subscribing patients) can only be viewed as 'relating to' those benefits. To this we might add our own conviction that the nexus is 'clear( ) and direct( ).' " Humana, supra, 191 U.S.App.D.C. at 381, 590 F.2d at 1083.
 
 
 25
 Good Sam does not attempt to distinguish the Humana decision at the court of appeals level (counsel do not refer to it in their briefs), but does attempt to distinguish the Humana district court decision. It argues that Humana is not apposite because the facts there involved a return on equity provision, not interest costs on construction, and that the language on the benefit exception at the district court level was Dicta. It further argues that in Humana the Secretary of HEW had not previously issued regulations according to APA procedures, as he had here, and that in Humana there was no conflict between the regulations and the statute, as Good Sam contends exists here. Finally, it argues that the precedent the district court in Humana relied upon did not support its Dicta.
 
 
 26
 The distinctions are unpersuasive. Good Sam draws too fine a line between return on equity provisions and interest costs. The DC Circuit Humana opinion is quite explicit in its language extending the benefit exception to all Provider Reimbursement Provisions under the Medicare Act. We are in full agreement. The Medicare program is designed to benefit the aged and the disabled. One method of accomplishing this goal is by full reimbursement to the providers of services for the direct and indirect costs incurred in treating beneficiaries. The reimbursement program relates directly to the benefits provided. The Congressional intent in providing the exception was "to afford agencies procedural latitude regardless of the interest of affected parties and the public generally . . ." Humana, supra, 191 U.S.App.D.C. at 382, 590 F.2d at 1084. We need not here comment on the fact that in 1971 the Secretary waived the benefit exception to the rulemaking procedures and now proceeds under the Notice and Comment Requirements of 36 Fed.Reg. 2532 (1971). This waiver was not applicable to the case at bar because it took place after the promulgation of Letter No. 51 and of section 206.
 
 II.
 
 27
 In the light of the fact that the benefit exception applies, we have no need to rule on the applicability of the "Interpretive Rule" exception under 5 U.S.C. § 553(b)(A) of the Administrative Procedure Act.
 
 III.
 
 28
 Good Sam claims that Section 206 of the Provider Reimbursement Manual and the Intermediary Letter No. 51 are totally inconsistent with the Medicare Statute and Regulations and, consequently, void.
 
 
 29
 All parties here agree that Letter No. 51 and Section 206 are not legislative regulations with the force of law. Appellees call them " Interpretive Rules." Good Sam prefers to call them "Guidelines" which conflict with the statutory and regulatory scheme. Needless to say, in the review of an Interpretive Rule, the courts are free to substitute their own judgment on the validity of the rule in the light of the statute and the regulations. The proper weight to be given an Interpretive Rule was considered by the Supreme Court in Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), where it is said at page 140, 65 S.Ct. at page 164:
 
 
 30
 "We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."
 
 
 31
 It follows that if an agency's interpretation of a statute or regulation is not clearly outside its authority, then the courts should defer to the agency's expertise. Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Brubaker v. Morton, 500 F.2d 200 (CA9 1974).
 
 
 32
 To fully understand the arguments of the respective parties, it is necessary to set forth pertinent statutory and regulatory provisions which in our opinion control the disposition of the case.
 
 42 U.S.C. § 1395x (v)(1)(A) provides:
 
 33
 ". . . Such regulations (on determining reasonable costs) shall (i) take into account both direct and indirect costs of providers of services . . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter Will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs, . . ." (Emphasis supplied.)
 
 42 U.S.C. § 1395x (v)(1)(A) also provides:
 
 34
 "In prescribing the regulations . . . the Secretary shall consider, among other things, the principles generally applied by national organizations or established prepayment organizations . . .."
 
 
 35
 20 C.F.R. § 405.406(a) provides:"The principles of cost reimbursement will require that providers maintain sufficient financial records and statistical data for proper determination of costs payable under the program. Standardized definitions, accounting, statistics, and reporting practices Which are widely accepted in the hospital and related fields are followed. Changes in these practices and systems will not be required in order to determine costs payable under the principles of reimbursement. . . ." (Emphasis supplied.)
 
 20 C.F.R. § 405.451(b)(2) provides:
 
 36
 "Necessary and proper costs. Necessary and proper costs are costs which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities. They are usually costs which are common and accepted occurrences in the field of the provider's activity."
 
 
 37
 Good Sam contends that it is entitled, under § 1395x (v)(1)(A), to reimbursement for costs actually incurred, and that since the interest costs on the construction loan were incurred and paid during the construction phase of the project, the costs should be expensable and reimbursable in those years. Continuing, Good Sam argues that if it must capitalize the interest costs, reimbursement will come with dollars cheapened by inflation, and that those dollars would not adequately reimburse Good Sam for the costs actually incurred during 1973 and 1974. Furthermore, it argues that the new facility was necessary to improve the health care provided to program beneficiaries and non-covered individuals alike. To deny current reimbursement means non-Medicare patients will pay all the costs in contravention of § 1395x (v)(1)(A). Moreover, expensing interest costs on construction loans is a generally accepted accounting principle the statute and regulations permit. Finally, requiring capitalization discourages the building of newer improved facilities.
 
 
 38
 Appellees counter with the argument that § 1395 requires that payment be made only when Medicare beneficiaries have actually reaped the benefit of the construction. Consequently, because the beneficiaries did not use the hospital until 1975, it would violate congressional intent to pay interest expense prior to that time. They also argue that there is nothing to indicate that the Congress in any way intended to take into account the ravages of inflation in connection with the costs actually incurred, and that requiring capitalization does not prevent eventual reimbursement, but rather guarantees that the funds provided will match the services rendered. Additionally, they argue that although "expensing" of interest is an alternative accounting method, the regulations require that "accounting practices which are widely accepted in the hospital and related fields are followed." (20 C.F.R. § 405.406(a)), and that because the American Hospital Association states that the proper treatment of the interest costs here in issue is capitalization, the Intermediary Letter and § 206 are reasonable interpretations of what the statute and regulations require.
 
 
 39
 We hold that the record before us supports the finding that capitalization is the proper treatment of interest costs incurred during the course of construction. While the answer to the question is not without its problems, we are committed to the rule that 5 U.S.C. § 706 was designed to free us from the time consuming and difficult task of weighing the evidence. Likewise, the statute requires us to give proper respect to the expertise of the administrative tribunal in order to promote uniform application of the statute and regulations involved. Consolo v. Federal Maritime Commission,383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). Even the fact that we might draw two inconsistent conclusions from the record does not prevent the administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Commission, supra; Illinois Central v. Norfolk & Western Ry. Co., 385 U.S. 57, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966). In the final analysis, the law requires us to give great weight to the Secretary's interpretation of the statute and the regulations. Udall v. Tallman, supra; Brubaker v. Morton, supra.
 
 
 40
 Beyond that, we believe what appears to be the congressional intent would fully support the Secretary's interpretation. Clearly, the Congress placed considerable emphasis on seeing to it that the program beneficiaries reaped the fruits of the construction. This position in no way precludes the eventual reimbursement of Good Sam. It will be fully reimbursed as the physical plant depreciates. We find nothing to suggest that the erosion of inflation on the value of dollars was an element which was considered by the Congress as a cost or otherwise. While it is true that neither the statute nor the regulations give a precise formula on how to treat interest costs incurred during the course of construction of new facilities, we are persuaded by the Secretary's expertise and interpretation. That interpretation is not outside his authority and is not in violation of the statute or the regulations.
 
 
 41
 The judgment of the district court should be affirmed.
 
 
 42
 IT IS SO ORDERED.
 
 
 
 *
 The Honorable Wilson Cowen, Senior Judge, United States Court of Claims, sitting by designation