**AMERICAN HOSPITAL MANAGE-MENT CORP., Plaintiff-Appellant,**

v.

**Patricia HARRIS \*, Secretary of Health & Human Services; Blue Cross of Northern California, Blue Cross Association, Defendants-Appellees.**

**No. 77–3906.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 18, 1980.

Decided Feb. 5, 1981.

* We substitute the name Patricia Harris, Secretary of the United States Department of Health & Human Services, as the successor to the original appellant Joseph A. Califano, the Secretary of the former United States Department of Health, Education & Welfare, per Fed.R. App.P. 43.

Paul A. Schumann, Schumann & Shain, San Francisco, Cal., for plaintiff-appellant.

William T. McGivern, Asst. U. S. Atty., San Francisco, Cal., White, Giambroni & Walters, Oakland, Cal., for defendants-appellees.

Before KENNEDY, SKOPIL and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

Appellant American Hospital Management Corporation [AHMC] appeals from a dismissal of its action challenging the validity and applicability of 42 C.F.R. § 405.427 (1980).[1] We affirm the judgment of dismissal.

---

1. 42 C.F.R. § 405.427 was formerly codified as 20 C.F.R. § 405.427. 42 C.F.R. § 405.427 (1980) provides:

(a) *Principle.* Costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization. However, such cost must not exceed the price of comparable services, facilities, or supplies that could be purchased elsewhere.

(b) *Definitions* (1) *Related to provider.* Related to the provider means that the provider to a significant extent is associated or affiliated with or has control of or is controlled by the organization furnishing the services, facilities, or supplies.

(2) *Common Ownership.* Common ownership exists when an individual or individuals possess significant ownership or equity in the provider and the institution or organization serving the provider.

(3) *Control.* Control exists where an individual or an organization has the power, directly or indirectly, significantly to influence or direct the actions or policies of an organization or institution.

The facts are not in dispute. In 1972, AHMC owned and operated Unity Hospital in San Francisco. AHMC was at that time in extreme financial difficulty, and urgently needed substantial funds to remain in business. After trying, unsuccessfully to negotiate a sale and leaseback arrangement concerning Unity Hospital with outsiders, AHMC sold and leased back the facility from California Medical Properties Company [Cal Med], a limited partnership formed by a group of AHMC stockholders.

The agreement was consummated on November 1, 1972, with a purchase price of $1,800,000,[2] and a lease calling for an annual rental of $180,000 for 20 years. At the time of the sale the facility had an appraised value of $2,254,000. Without the cash funds and the assumption of the delinquent taxes, AHMC would have been forced into bankruptcy.

Allan C. Shaw, the only general partner of Cal Med, was also the president of AHMC. He held 44.94 percent of the common stock of AHMC and a 10 percent interest in the limited partnership. Three of the directors of AHMC held 46.16 of the common stock and a 30 percent interest in the limited partnership. In total, partners holding a cumulative 60.44 percent interest in the limited partnership owned 48.86 percent of the AHMC stock.

In 1974, AHMC filed a claim under the Medicare Act for $180,000, the amount of rent paid to Cal Med, as a reimbursement cost.

Blue Cross of Northern California, acting as Intermediary for the then Secretary of the Department of Health, Education & Welfare ["HEW"], Joseph Califano, disallowed the rental payment as a cost because it considered the sale and leaseback of Unity Hospital as a transaction between related organizations within the meaning of 42 C.F.R. § 405.427. Appellant AHMC appealed the intermediary's determination to the

---

(c) *Application.* (1) Individuals and organizations associate with others for various reasons and by various means. Some deem it appropriate to do so to assure a steady flow of supplies or services, to reduce competition, to gain a tax advantage, to extend influence, and for other reasons. These goals may be accomplished by means of ownership or control, by financial assistance, by management assistance, and other ways.

(2) Where the provider obtains items or services, facilities, or supplies from an organization, even though it is a separate legal entity, and the organization is owned or controlled by the owner(s) of the provider, in effect the items are obtained from itself. An example would be a corporation building a hospital or a nursing home and then leasing it to another corporation controlled by the owner. Therefore, reimbursable cost should include the costs for these items at the cost to the supplying organization. However, if the price in the open market for comparable services, facilities, or supplies is lower than the cost to the supplier, the allowable cost to the provider shall not exceed the market price.

(d) *Exception.* An exception is provided to this general principle if the provider demonstrated by convincing evidence to the satisfaction of the fiscal intermediary (or, where the provider has not nominated a fiscal intermediary the Health Care Financing Administration) that the separate organization is a bona fide separate organization; that a substantial part of its business activity of the type carried on with the provider is transacted with others than the provider and organizations related to the supplier by common ownership or control and there is an open, competitive market for the type of services, facilities, or supplies furnished by the organization; that the services, facilities, or supplies are those which commonly are obtained by institutions such as the provider from other organizations and are not a basic element of patient care ordinarily furnished directly to patients by such institutions; and that the charge to the provider is in line with the charge for such services, facilities, or supplies in the open market and no more than the charge made under comparable circumstances to others by the organization for such services, facilities, or supplies. In such cases, the charge by the supplier to the provider for such services, facilities or supplies shall be allowable at cost.

2. The purchase price of $1,800,000 was paid as follows:

1. Cal Med assumed a deed of trust in the amount of $372,841;
2. Cal Med gave a note secured by a new deed of trust to AHMC in the amount of $698,072;
3. Cal Med assumed delinquent property taxes in the sum of $229,087;
4. Cash in the amount of $380,000 and a cancellation of a debt owed by AHMC to Cal Med in the sum of $120,000 for a total of $500,000.

Provider Reimbursement Review Board ["the Board"]. The Board affirmed the action of the intermediary. That decision became the final decision of the Secretary. Appellant brought an action in federal district court challenging the Secretary's decision; the district court, after hearing, granted the Secretary's motion for summary judgment.

■ Appellants first contend that there is no factual support for the Board's finding that plaintiff AHMC and Cal Med are "related organizations" within the meaning of 42 C.F.R. § 405.427. We cannot agree.

Our review of the Board's conclusion is limited to determining whether that finding is supported by substantial evidence. 42 U.S.C. § 139500(a)–(d) (1976); 42 U.S.C. § 1395(00(f) (1976); 5 U.S.C. § 706(2) (1976); *Memorial Inc. v. Harris*, No. 78–3169, slip op. at 2502 (9th Cir. March 28, 1980). *See Good Samaritan Hospital, Corvallis v. Mathews*, 609 F.2d 949, 951 (9th Cir. 1979). While we recognize that our review of the Board's conclusion must be searching and careful,[3] we cannot substitute our judgment for that of the Board simply because we might have reached a different conclusion. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The Board found that AHMC and Cal Med were "related organizations" within the meaning of Section 405.427 because of common ownership and common control of both organizations. That finding

is supported by substantial evidence. The 16 partners of Cal Med owned approximately fifty percent of AHMC's common stock and 6.34 percent of its preferred stock. This fact clearly supports the Board's finding of common ownership. Similarly, the record shows that the president of AHMC was the only general partner of Cal Med, placing him in a position of significant influence in both organizations. Moreover, three of AHMC's seven directors held a 30 percent interest in Cal Med. These facts, in addition to the significant degree of common ownership of the stock of both organizations, fully supports the Board's findings that AHMC and Cal Med were subject to common control within the meaning of § 405.427.[4]

Appellant next argues that in promulgating § 405.427, the Secretary of HEW exceeded the rule–making authority granted to him under 42 U.S.C. § 1395x(v)(1)(A) (1976).[5] According to the appellant, § 405.-427 is invalid because its application to the facts of this case would defeat two of the principal purposes of the enabling legislation under which the regulation was promulgated, namely, (1) that actual costs incurred by providers be reimbursed by Medicare, and (2) that necessary costs incurred for efficiently delivering services to Medicare recipients not be shifted to those not so covered. According to appellants, while HEW may promulgate regulations under § 1395x(v)(1)(A) to protect Medicare against unfair and overreaching claims on

---

3. *Memorial, Inc. v. Harris*, No. 78–3169, Slip op. at 2504 (9th Cir. March 28, 1980).

4. The Secretary's finding of common control and ownership has also been upheld in *Medical Center of Independence v. Harris*, 628 F.2d 1113 (8th Cir. 1980) and *Fallston General Hospital v. Harris*, 481 F.Supp. 1066 (D.Md.1979).

5. Section 1861(v)(1)(A) of the Act, 42 U.S.C. Section 1395x(v)(1)(A) (1976) provides in pertinent part:

(v)(1)(A) Reasonable Cost. The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or meth-

ods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services . . . . Such regulations shall . . . take into account both direct and indirect costs of providers of services (excluding therefrom any such costs, including standby costs, which are determined in accordance with regulations to be unnecessary in the efficient delivery of services covered by the insurance program established under this subchapter) in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered. . . .

the part of providers, this regulation's attempt to achieve that purpose is impermissibly overbroad.

■■ We hold that § 405.427 is a proper exercise of the Secretary's rule–making authority under § 1395x(v)(1)(A). Our review of the validity of that regulation is limited to determining whether the regulation is reasonably related to the purpose of the relevant enabling legislation, as well as to the more particular purpose through which the regulation implements those objectives in a particular area. *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973). In making our determination, we must give substantial deference to HEW's interpretation of § 1395x(v)(1)(A) as set forth in the challenged regulation; HEW was the agency charged with the responsibility for interpreting the statute, and presumably has brought its expertise to bear in formulating the regulation that interprets it. *See Udall v. Tallman*, 380 U.S. 1, 16–18, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1965).

The statute mandates that only costs actually incurred in the efficient delivery of needed health care services be reimbursed. 42 U.S.C. § 1395x(v)(1)(A) (1976). The regulation implements that requirement by providing that where facilities, services or supplies are furnished to a provider by a "related" entity, the provider is to be reimbursed at the cost of those items to the related entity, rather than at the cost charged to the provider. In the Secretary's judgment, there is a significant likelihood that charges incurred by providers in their transactions with entities related to them by common ownership or control will be artificially inflated because of the absence of bona fide arms–length bargaining. The regulation is thus designed to prevent seemingly separate entities from engaging in what is in fact self–dealing at the expense of the Medicare program. *Schroeder Nursing Care, Inc. v. Mutual of Omaha Insur-*

ance Co., 311 F.Supp. 405, 410 (E.D.Wis. 1970).

Appellants concede that there is a potential for abuse in transactions between related entities, but argue that the transaction involved in this case had all the indicia of fairness. They urge us to require the Secretary to scrutinize each transaction between related entities individually for unfairness, so that just compensation will not be denied to providers whose transactions with related entities do not exhibit the artificial inflation of costs that the regulation is designed to guard against.

■ It is true that the regulation here may not achieve its objective with mathematical precision; in this case, for example, the appellees concede that but for the regulation in question, AHMC's request for reimbursement would have been approved. It is well established, however, that this fact, standing alone, will not invalidate the regulation. *See Knebel v. Hein*, 429 U.S. 288, 294–95, 97 S.Ct. 549, 553–54, 50 L.Ed.2d 485 (1977); *Mercy Hospital & Medical Center, San Diego v. Harris*, 625 F.2d 905, 909–10 (9th Cir. 1980). So long as the regulation has a reasonable basis in fact, the regulation must be upheld as a valid exercise of the Secretary's discretion.[6] As stated by the Fourth Circuit in its well–reasoned opinion in *Fairfax Hospital Ass'n, Inc. v. Califano*, 585 F.2d 602, 606 (4th Cir. 1978):

> Particularly in a program as complex as the Medicare program, with its large number of providers and suppliers ..., the Secretary in his regulations may make, indeed he must make, 'rough accommodations,—illogical, it may be, and unscientific,' using generalized classifications governing the methods of calculating 'reasonable cost' when it is obvious that individualized cost calculations are both not administratively practical and unduly expensive. (footnotes omitted)[7]

---

**6.** *See also Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

**7.** While the court in *Fairfax* was there discussing the appropriate degree of precision required

for the regulation to be upheld under equal protection principles, the court's analysis is equally apposite to the determination of whether the regulation is a proper exercise of the

Here, the criteria in the challenged regulation which define "related entity" are carefully drawn and are sufficiently precise [8] so that entities found to be "related" under the regulation are reasonably assumed to be dealing with each other at less than arms–length. The regulation, in addition, further narrows the scope of "related entity" by exempting from its coverage providers who demonstrate that the transaction in question meets the conditions set out in subsection (d). We therefore conclude that the regulation, hedged as it is by a reasonable exception, is a proper exercise of the Secretary's rule making authority under § 1395x(v)(1)(A).

We recognize that the refusal of the Secretary to scrutinize the fairness of each transaction found to be covered under § 405.427 will occasionally work unfair results. However, given the limited scope of this court's review of the Secretary's actions in promulgating that regulation, we cannot say that the challenged regulation bears no reasonable relationship to the enabling legislation that it was designed to implement, or to the more narrow objective that the regulation was designed to achieve. *See Knebel v. Hein,* 429 U.S. at 296–97, 97 S.Ct. at 554–55; *Hillside Community Hospital of Ukiah v. Mathews,* 423 F.Supp. 1168 (N.D.Cal.1976); *Schroeder Nursing Care, Inc. v. Mutual of Omaha Insurance Co.,* 311 F.Supp. 405 (E.D.Wis.1970).[9]

Finally, appellant argues that Section 405.427 violates the equal protection principles embodied in the due process clause of the fifth amendment. Again, however, our review of the ·constitutionality of regulations promulgated under

§ 1395x(v)(1)(A) is limited to determining whether the regulation in question is reasonably related to achieving a permissible objective. *Knebel v. Hein,* 429 U.S. at 297, 97 S.Ct. at 555; *Weinberger v. Salfi,* 422 U.S. 749, 769, 95 S.Ct. 2457, 2468, 45 L.Ed.2d 522 (1975). So long as the classifications created by the regulation bear a reasonable relationship to the purpose of the regulation, the classification scheme must be upheld as constitutional. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); *Fairfax Hospital Ass'n, Inc. v. Califano,* 585 F.2d at 606, 609–10. The classification of "related entity", as outlined above, was established to prevent the reimbursement of excessive charges resulting from self–dealing, and is a reasonable method of achieving this objective. In achieving that objective, the regulation also carries out the purpose of the relevant enabling legislation, which is to assure that only reasonable and necessary costs actually incurred are reimbursed. Section 1395x(v)(1)(A). We find no constitutional infirmity.

AFFIRMED.

Secretary's rule making authority. *See Knebel v. Hein,* 429 U.S. at 294–96, 97 S.Ct. at 553–54.

**8.** *See Fairfax,* 585 F.2d at 607.

**9.** The case of *South Boston General Hosp. v. Blue Cross of Va.,* 409 F.Supp. 1938 (W.D.Va. 1976), cited by appellants, is not controlling. We first note that the *South Boston* court itself distinguished the regulations before it from the regulation at issue here, since the regulation before it, unlike § 405.427, admitted of no exceptions. *Id.* at 1383–4 n. 2. To the extent that this case is indistinguishable from *South Boston,* however, we decline to follow it. *South Boston* cited no case authority for its conclusion that the Secretary must individually scrutinize transactions involving related entities for fairness. The Supreme Court's decision in *Knebel v. Hein,* 429 U.S. 288, 97 S.Ct. 549, 50 L.Ed.2d 485, has since made it clear that a more deferential standard of judicial review is appropriate where the validity of regulations such as those promulgated under § 1395x (v)(1)(A) is involved.