The **REGENTS OF the UNIVERSITY OF CALIFORNIA, Plaintiff,**

v.

**Donna E. SHALALA, Secretary, United States Department of Health and Human Services, Defendant.**

No. CV–93–4242–RSWL (Ex).

United States District Court, C.D. California.

Sept. 6, 1994.

James E. Holst, John F. Lundberg, Robert Barnes, University of Cal., Oakland, CA, for plaintiff.

Nora A. Manella, U.S. Atty., Leon W. Weidman, Chief, Civ. Div., Russell Chittenden, Los Angeles, CA, for defendant.

## ORDER

LEW, District Judge.

## I. INTRODUCTION

Before the Court are the parties' cross motions for summary judgment. The matter came up for hearing on the Court's law and motions calendar on August 29, 1994. Now, having carefully considered all of the papers filed in support of and in opposition to the motions, the Court hereby **GRANTS** Defendant, Department of Health and Human Services' cross motion for summary judgment and **DENIES** Plaintiff, Regents of the University of California's motion for summary judgment.

## II. BACKGROUND

Plaintiff, The Regents of the University of California ("The Regents") filed its complaint in this case asking the Court to review an administrative decision by the Provider Reimbursement Review Board ("the Review Board") denying it certain cost reimbursements under the Medicare program. The Regents' complaint arises out of a dispute over medical care provider reimbursements for its affiliated medical centers. These reimbursements initially are reviewed by a "fiscal intermediary," which serves as the agent of Defendant, Department of Health and Human Services ("HHS") and evaluates a provider's claims for reimbursements at the end of each year. In the present case, Blue Cross/Blue Shield of California acted as the fiscal intermediary, initially denying the reimbursement requests at issue in this case.

Appeals from adverse decisions of a fiscal intermediary are heard by the Review Board, whose decisions are final unless the Secretary of HHS revises or modifies such a decision on her own motion. In this case, the Review Board heard and affirmed Blue Cross/Blue Shield's initial denial of The Regents' reimbursement requests and the Secretary took no further action on The Regents' claims. The Regents (the provider) has a right to judicial review in district court of the Review Board's final decision or any subsequent action taken by the Secretary. 42 U.S.C. § 1395oo (f). It is in this posture of review that the case is presently before the Court.

Specifically at issue in this case is The Regents' claim that it is entitled to reimbursement for interest expenses incurred on money it loaned to its UCLA, UC Irvine and UC San Diego medical centers. Defendant claims, and the Review Board held below, that reimbursement for such interest expenses is not available under applicable regulations because the loans at issue were between related parties, that is, the medical centers and The Regents. It is undisputed that the medical centers and The Regents are the same legal entity and thus, related parties for purposes of the relevant regulations. Each UC medical center involved in this case has various claims for interest reim-

bursement for the years 1982 through 1985. These claims were consolidated for review in the administrative proceedings below, and are consolidated for purposes of this case as well.[1] The total amount of disputed interest expense that The Regents claims to be entitled to in this case is $1.6 million.

It is uncontested that the interest expense claimed on loans made by The Regents to its various medical centers during the years at issue was well below then-existing market rates.[2] Nonetheless, Defendant asserts that its regulation, 42 C.F.R. § 405.419 (1985) ("Regulation 405.419"),[3] prohibits reimbursement of The Regents for this interest because it was incurred through related party borrowing. Defendant justifies its regulation by asserting that it acts as a prophylactic rule to prevent abuses that could occur in lending transactions between related parties. Specifically, Defendant is concerned that without such a prophylactic regulation, unnecessary loans will be made, or excessive rates of interest charged on borrowings between related entities.[4] It is uncontested that there is no evidence of such abuses in this case. Defendant asserts, however, that its regulation must nonetheless apply. Both parties have thus agreed that the issue presented to the Court is whether Defendant's application and interpretation of Regulation 405.419 disallowing reimbursement for related organization interest expenses, even when such expenses are in fact proper, was arbitrary and capricious, or otherwise improper under law.

At the administrative level, this case was decided on stipulated facts, with no oral argument having been heard by the Review Board. Thus, the case comes to this Court under the same stipulated factual record. In its motion, The Regents challenges both the

Defendant's interpretation of Regulation 405.419, as well as its promulgation of that regulation under the Medicare statute. In addition, The Regents points to several potential constitutional problems raised by Defendant's interpretation of the regulation to argue that such interpretation is erroneous. The Regents points to these constitutional issues as support for its argument that Regulation 405.419 must be interpreted not as an absolute, prophylactic bar to reimbursement for related party interest expenses, but rather, as a rebuttable presumption that such expenses are not reimbursable. In this case, The Regents argues, the uncontested fact that its loans were proper serves to rebut that presumption.

## III. STANDARD FOR ISSUANCE OF SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of identifying this absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party, on the other hand, is required by Rule 56(e) to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. Nonmoving parties can meet this requirement by use of affidavits, depositions, answers to interrogatories, or admissions on file. *Id.* However, conclusory allegations unsupported by factual data are insufficient to create a triable issue of fact so as to preclude issuance of summary judgment. *Exxon Corp. v. Federal Trade Comm'n*, 663 F.2d 120, 127

---

1. Although the Regents is the lender in this case, it nonetheless stands as plaintiff in that its related medical centers are not independent legal entities and therefore lack the capacity to sue or be sued.

2. The Regents asserts that the related party loans in question were necessitated by the fact that its providers did not have the legal capacity to borrow money from outside sources. The basis of such loans, however, is irrelevant to the question of whether Defendant's denial of reimbursement for expenses attributable to them was a reason-

able interpretation of the relevant statute and regulations.

3. This provision was redesignated 42 C.F.R. § 413.153 in 1986. No substantive changes have been made to the regulation.

4. These justifications for the prohibition on related party interest reimbursement are outlined in the applicable regulation itself. 42 C.F.R. § 405.419(c) (1985) (redesignated as 42 C.F.R. § 413.153(c) (1993)).

(D.C.Cir.1980). The judge must view the evidence in the light most favorable to the nonmovant, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *Pacific Express, Inc. v. United Airlines, Inc.,* 959 F.2d 814, 816 (9th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 814, 121 L.Ed.2d 686 (1992).

■ Summary judgment is a particularly appropriate vehicle for resolving appeals from administrative agency determinations, since the agency itself serves as the fact finder, and the appeal is generally limited to questions of law. *First National Bank v. Smith,* 508 F.2d 1371, 1374 (8th Cir.1974), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975); *see also* 10A A. Wright, C. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2733, at 366–67 (1983).

## IV. DISCUSSION

■ Under the Medicare statute, medical care providers are to be reimbursed for the "reasonable costs" of services they provide Medicare patients. 42 U.S.C.A. § 1395f(b) (Supp.1994). Regulations promulgated under this statute by HHS include within the definition of reasonable costs, "[n]ecessary and proper interest on both current and capital indebtedness." 42 C.F.R. § 405.419(a)(1) (1985); *see also* 42 U.S.C.A. § 1395x(v) (Supp.1994) (defining reasonable costs and granting HHS the authority to promulgate explanatory regulations). Under applicable regulations, however, to be reimbursable, interest expense "must be incurred on indebtedness established with lenders … *not related through control, ownership, or personal relationship to the borrower.*" 42 C.F.R. § 405.419(c)(1) (emphasis added).

### A. Review of Defendant's Regulatory Interpretations and Promulgation.

Review over administrative determinations made by the Review Board is governed by 42 U.S.C.A. § 1395*oo* (f)(1) (Supp.1994), which specifically incorporates the standards of review contained in the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. The APA requires that the district court "decide all relevant questions of law, interpret consti-

tutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." *Id.* § 706. Furthermore, under the APA, the court must "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* In this case, The Regents challenges both the Review Board's interpretation of the relevant Medicare regulation (Regulation 405.419) as well as HHS's initial promulgation of that Regulation under the Medicare statute.

### 1. Defendant's Interpretation of its Regulation.

#### a. Standard of review.

■ Courts generally give considerable deference to any agency interpretation involving an issue within that agency's particular expertise. *Pacific Coast Medical Enters. v. Harris,* 633 F.2d 123, 131 (9th Cir.1980). "This is especially true when an agency's own regulation is involved, and ordinarily, its construction will be affirmed if it is not *clearly erroneous or inconsistent with the regulation.*" *Id.* (citing *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)) (emphasis added). While a large degree of deference is given to such agency determinations, " 'the deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia.' " *Id.* (quoting *American Ship Building Co. v. NLRB,* 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965)). Thus, the Review Board's decision in this case upholding Defendant's interpretation of Regulation 405.419 must be given a considerable, although not unlimited, degree of deference.

#### b. Defendant's interpretation of the regulations.

The Regents argues that for various reasons, the related party interest restrictions contained in Regulation 405.419 cannot be interpreted to act as an automatic bar to the recovery of interest expense owed by providers (i.e. its medical centers) to related entities (i.e. The Regents itself). Rather, it argues that the regulatory scheme should be

interpreted to establish a rebuttable presumption that related party loans are improper. This presumption could be overcome, The Regents argues, by a showing that the particular loans at issue were in fact proper. Defendant argues, on the other hand, that the applicable regulatory language is unequivocal: related party interest expenses are not reimbursable.

■ Examination of an agency's interpretation of a regulation involves a two prong analysis. First, the words of a regulation must be "reasonably susceptible to the construction placed upon them by the Secretary, both on their face and in light of their prior interpretation and application." *Pacific Coast Medical*, 633 F.2d at 131. In this case, the applicable regulation, on its face, prohibits reimbursement of related party interest expenses.[5] Thus, Defendant's interpretation must prevail under this component of the analysis, since it is undisputed that The Regents and its medical center providers are related entities.

■ Under the second component of the regulatory interpretation analysis, "the Secretary's construction must be reviewed in relation to the governing statute." *Id.* "Agency regulations must be consistent with and in furtherance of the purposes and policies embodied in the congressional statutes which authorize them." *Id.* The statutory mandate applicable in this case requires only that providers be reimbursed for the "reasonable cost" of services they provide. 42 U.S.C. § 1395f(b). Moreover, the Secretary is specifically authorized by the Medicare statute to further define what constitutes "reasonable cost," and the items to be included in that definition. 42 U.S.C. § 1395x(v)(1)(A). Thus, for Defendant to deny reimbursement for related party borrowing seems entirely consistent with the statutory scheme Congress established for reimbursements under the Medicare program.

In spite of the result mandated by application of the Medicare regulations, however, The Regents argues that in its case, the related party interest restriction should not apply. The Regents bases its argument on several decisions by other courts that viewed Defendant's interpretation of Regulation 405.419 as inconsistent with the reimbursement mandate of the Medicare statute itself. *See Trustees of Indiana University v. United States*, 618 F.2d 736, 739, 223 Ct.Cl. 88 (1980); *South Boston Gen. Hosp. v. Blue Cross*, 409 F.Supp. 1380, 1384–85 (W.D.Va. 1976). *Contra Hillside Community Hosp. v. Mathews*, 423 F.Supp. 1168, 1176 (N.D.Ca. 1976) (upholding Defendant's interpretation). In particular, The Regents cites the Court of Claims' decision in *Indiana University* for the proposition that a per se application of the related party interest exclusion in Regulation 405.419 is inconsistent with the purpose of the Medicare statute itself, that is, to reimburse providers for Medicare-related expenses. 618 F.2d at 739; *see also South Boston*, 409 F.Supp. at 1384–85 (requiring Defendant to give individualized scrutiny to related party borrowings). This inconsistency, the Court of Claims concluded, meant that it was not bound to follow the express wording of the regulation. *Indiana University*, 618 F.2d at 739 (citing *United States v. American Trucking Ass'ns, Inc.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940) and *Rucker v. Wabash R.R. Co.*, 418 F.2d 146 (7th Cir.1969)). In making its determination, however, the Court of Claims, made no mention of the deference it is required to give an agency's statutory interpretations.

■ Despite the holdings of other courts invalidating Defendant's interpretation of Regulation 405.419 based on its alleged inconsistency with the mandate of the Medicare statute, this Court's determination of the issue is governed by the Ninth Circuit's decision in *Goleta Valley Community Hospital v. Schweiker*, 647 F.2d 894 (9th Cir.1981). In *Goleta Valley*, the Court stated:

**5.** Under the regulations, to be "proper," interest expense must be "paid to a lender not related through control or ownership, or personal relationship to the borrowing organization." 42 C.F.R. § 405.419(b)(3)(ii) (1985). In addition, in order "to be allowable, interest expense must be incurred on indebtedness established with lenders or lending organizations not related through control, ownership, or personal relationship to the borrower." *Id.* § 405.419(c).

The [provider] argues that the application of [Regulations 405.427 and 405.419] automatically to deny reimbursement is contrary to both the Medicare Act and the United States Constitution. We have recently upheld both the statutory and constitutional validity of Regulation 405.427 by finding that the regulation is reasonably related to achieving a permissible objective. "The classification of 'related entity' ... was established to prevent the reimbursement of excessive charges resulting from self-dealing. . . ." The related entity classification was a reasonable method of achieving this objective. *The same related entity classification is used in Regulation 405.419 for exactly the same purpose: to ensure that entities deal with each other at arm's length. Thus we find regulation 405.419 is also valid.*

*Id.* at 897 (quoting *American Hospital Management Corp. v. Harris*, 638 F.2d 1208, 1212, 1213 (9th Cir.1981)) (citations omitted and emphasis added). Thus, Defendant's contention that the related party interest expense limitation *does* apply should prevail, despite the apparent over-inclusiveness of the regulation when applied to the facts of the present case. *See id.* (holding that under a comparable regulation, "[o]nce a determination has been made that the organizations are related, the Board need not inquire into whether the reimbursements claimed were reasonable").

### 2. *Defendant's Promulgation of the Regulation.*

#### a. *standard of review.*

■ Finding the Secretary's interpretation of the applicable regulation to be proper, the Court must next address the issue of whether the regulation itself is a proper interpretation of the authorizing legislation. Review over an agency's exercise of its rule-making authority "is limited to determining whether the regulation is reasonably related to the purpose of the relevant enabling legislation, as well as to the more particular purpose through which the regulation implements those objectives in a particular area." *American Hospital*, 638 F.2d at 1212. Substantial deference must be given to the agen-

cy's interpretation of the enabling legislation. It is that agency which has been directed by Congress to interpret the statute, and presumably, in promulgating its regulations, it has used its particular expertise in the area to interpret that statute. *Id.*

#### b. *promulgation of the regulation.*

■ This Court's review of an agency's adoption of a regulation is limited to making a determination as to whether it is reasonably related to the purpose of the enabling legislation. *American Hospital*, 638 F.2d at 1212. In the present case, it is clear that the objective of Medicare reimbursement is "to approximate as closely as practicable the actual cost (both direct and indirect) of services rendered to the beneficiaries of the [medicare] program." S.Rep. No. 404, 89th Cong. 1st Sess. at 36 (1965), *reprinted in* 1965 U.S.C.C.A.N. 1943, 1976. This intent is reflected in the Medicare statute itself. 42 U.S.C. § 1395x(v)(1)(A) (mandating that both direct and indirect costs be taken into consideration by HHS when calculating Medicare reimbursement).

■ The Ninth Circuit's discussion of a Medicare regulation similar to that involved in this case is relevant to this Court's interpretation of Regulation 405.519. In *American Hospital*, the Ninth Circuit stated:

The [Medicare] statute mandates that only costs actually incurred in the efficient delivery of needed health care services be reimbursed. The regulation implements that requirement by providing that where facilities, services or supplies are furnished to a provider by a "related" entity, the provider is to be reimbursed at the cost of those items to the related entity rather than at the cost charged to the provider. . . . The regulation is thus designed to prevent seemingly separate entities from engaging in what is in fact self-dealing at the expense of the Medicare program. . . . So long as the regulation has a reasonable basis in fact, the regulation must be upheld as a valid exercise of the Secretary's discretion.

638 F.2d at 1212. Unlike the regulation at issue in *American Hospital*, in the present

case the applicable regulation denies The Regents *all* interest cost, not just that deemed over actual or market rates. The Regents uses this fact to argue that it should at least be entitled to recover related party interest expenses incurred at undermarket rates. However, Defendant asserts that the justification for the related party interest regulation is not only a concern over excessive interest (comparable to the concern over excessive costs at issue in *American Hospital*). Rather, Defendant asserts that its regulation preventing *any* reimbursement for related party interest expense is further justified by a concern that *unnecessary* loans will be made in the first place, in an attempt to recoup interest reimbursement from the Medicare program. Defendant's concern is that controlling entities such as The Regents will loan money to their related providers rather than make ordinary capital contributions in order to recover interest expenses from the Medicare program. This concern is entirely reasonable and thus, will suffice as a basis for the Court to uphold the validity of Regulation 405.419. *See American Hospital*, 638 F.2d at 1212. Moreover, the reasonableness of the regulation is in line with Ninth Circuit's interpretations of related party reimbursement restrictions contained in other Medicare regulations. As the Court has stated:

> [I]n a program as complex and ripe with potential abuse as Medicare, the Secretary has broad discretion to control excessive costs by adopting general prophylactic rules which, despite their inherent imprecision, eliminate the need for a cumbersome and expensive process of adjudicating item-by-item the reasonableness of costs.

*Marina Mercy Hosp. v. Harris*, 633 F.2d 1301, 1304 (9th Cir.1980); *see also American Hospital*, 638 F.2d at 1212; *Goleta Valley*, 647 F.2d at 897; *Wisconsin Dep't of Health & Human Servs. v. Bowen*, 797 F.2d 391, 399 (7th Cir.1986) (holding that the over-inclusiveness of a regulation does not necessarily mean that it is arbitrary and capricious, so long as the agency has some "reasonable justification" for the rule). Thus, in this case, it is clear that Defendant's authority for promulgating rules is broad, and that such authority has not been exceeded by the adoption of Regulation 405.419.

**B.** *Irrebuttable Presumption Disallowing Related Party Interest as Violative of Due Process.*

Notwithstanding the reasonableness of Defendant's interpretation and promulgation of Regulation 405.419, The Regents asserts two constitutional grounds for its contention that Defendant's interpretation of that regulation is erroneous. In its first constitutional challenge, The Regents contests the constitutionality of Defendant's interpretation of Regulation 405.419 by claiming that it establishes an irrebuttable presumption violating the Due Process Clause of the Fifth Amendment. *See Vlandis v. Kline*, 412 U.S. 441, 447, 93 S.Ct. 2230, 2233, 37 L.Ed.2d 63 (1973) ("Statutes creating permanent irrebuttable presumptions have long been disfavored under the Due Process Clause of the Fifth and Fourteenth Amendments.").

The Regents argument, however, must fail, again based on the Ninth Circuit's decision in *Goleta Valley*, 647 F.2d at 894. As discussed *supra*, in *Goleta Valley* the Ninth Circuit specifically held that Regulation 405.419's automatic denial of related party interest expense reimbursement was constitutionally valid. *Id.* at 897. This determination is consistent with the Supreme Court's directive that social welfare regulations need not be invalidated on due process grounds merely because they are not "made with mathematical nicety or because in practice [they] result[ ] in some inequity." *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). According to the Court, if there is some reasonable basis for the rule, it must be upheld. *Id.* Regulation 405.419 states its justification as "to assure that loans are legitimate and needed, and that the interest rate is reasonable." 42 C.F.R. § 405.419 (1985). "If the owner uses his own funds in a business, it is reasonable to treat the funds as invested funds or capital, rather than borrowed funds." *Id.* The Regents does not challenge the general reasonableness of this regulation, only the application of the regulation in this case. However, pursuant to the Supreme

Court's decision in *Dandridge,* and the Ninth Circuit's holding in *Goleta Valley,* the Due Process challenge to the related party interest regulation must fail. *See also Hillside Community Hosp. v. Mathews,* 423 F.Supp. 1168, 1176 (N.D.Cal.1976) (rejecting a Medicare provider's argument that inflexible application of Regulation 405.419 amounts to an unconstitutional irrebuttable presumption).

### C. *First Amendment Violations.*

The Regents' second constitutional challenge to Defendant's interpretation of Regulation 405.419 is based on the Establishment Clause of the First Amendment. In particular, The Regents cites a provision in Regulation 405.419 allowing reimbursement for related party interest expenses when "a provider operated by members of a religious order borrows from the order." 42 C.F.R. § 405.419(c)(2) (1985). The Regents cites this provision to claim that if the regulation is interpreted categorically to disallow interest reimbursement for nonreligious related entities, then the exception allowing reimbursement for borrowing between related *religious* entities will violate the Establishment Clause of the First Amendment by giving such entities a preference over secular Medicare providers.

#### 1. *The Regents' Standing to Assert an Establishment Clause Challenge.*

■ An initial question is raised as to The Regents standing to bring an Establishment Clause challenge to the religious order exception contained in Regulation 405.419.[6] One Court addressing the issue stated in *dicta,* that a provider similarly situated to The Regents "may lack the requisite standing to challenge the regulation in that [the fiscal intermediary] did not invoke subsection (c)(2), the alleged unconstitutional subsection, when making adjustments to the [provider's] cost report." *Frankford Hospital v. Davis,* 647 F.Supp. 1443, 1452 (E.D.Pa.1986). Although its motion fails to address the standing issue in any way, at oral argument on the present motions The Regents asserted that its standing to challenge the constitutionality of Regulation 405.419 was based on its position as a competitor of religiously affiliated Medicare providers. That is, since religious-

ly affiliated competitors may recover related party interest expense and The Regents may not, those competitors are placed at an unfair advantage solely based on their religious affiliation. The Regents claims that this competitor advantage could cause it an economic injury sufficient to confer standing to challenge Defendant's interpretation of Regulation 405.419 under the Establishment Clause. A review of the doctrine of competitor standing, however, demonstrates that The Regents' argument must fail.

■ In order to invoke the doctrine of competitor standing, a party must "first allege that the challenged [regulatory] action has caused him injury in fact, economic or otherwise." *Association of Data Processing Service Orgs., Inc. v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). In order for the reviewing court to find standing, "the plaintiff [must] show an injury to himself that is likely to be redressed by a favorable decision. Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation." *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). When a party asserts only an *indirect* injury, it is substantially more difficult for a court to find standing created by that injury. *Id.* at 44–45, 96 S.Ct. at 1927; *see also City of Rohnert Park v. Harris,* 601 F.2d 1040, 1048 (9th Cir.1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980).

In the present case, The Regents has not alleged that Defendant's invocation of the religious order exception in Regulation 405.419 has caused it any direct injury. Rather, The Regents makes only a vague, hypothetical assertion that the religious order exception *could* be invoked in such a manner by Defendant so as to cause it an economic injury. That injury would presumably relate to a loss of patients and revenue due to the higher prices The Regents would have to charge Medicare patients by not being reimbursed for related party borrowing expenses. Such attenuated and hypothetical injuries are an insufficient basis for

**6.** 42 C.F.R. § 419.405(c)(2) (1985) (redesignated 42 C.F.R. § 413.153(c)(2) (1993)).

this Court to find standing for The Regents to challenge Regulation 405.419 under the Establishment Clause. "Although potential injury may be sufficient to confer standing, the relationship between the injury here and the alleged illegal agency action is too attenuated to meet the minimum Article III requirements." *Rohnert Park,* 601 F.2d at 1049.

In order to find standing, the Court, without *any* evidence being presented by The Regents, would have to assume a number of elements in the causal chain between Defendant's action and The Regents' asserted economic injury. These assumptions include: (1) that the religious order exception contained in Regulation 405.419 has been invoked by Defendant; (2) that religiously-affiliated Medicare providers gained some financial benefit from related party borrowing, and were allowed Medicare reimbursement from Defendant; (3) that such providers were competitors of The Regents; and (4) that being able to take advantage of the related party expense exception allowed such competitors to undercut The Regents in their provision of Medicare services, thus causing The Regents a competitive, economic injury. Without any evidence of such factors, the Court must find that The Regents assertions of possible economic injury are too conjectural and hypothetical to confer competitor standing. *See Rohnert Park,* 601 F.2d at 1049. Thus, having found that The Regents has no standing to challenge the religious order exception to related party interest reimbursement contained in Regulation 405.419, the merits of its Establishment Clause challenge need not be addressed by the Court.

## V. *CONCLUSION*

▮ Regulation 405.419 on its face denies The Regents reimbursement for interest expenses incurred through loans made to its related medical centers. This prophylactic regulation, while potentially over-inclusive in scope, has been reasonably interpreted by Defendant, and is itself a proper and reasonable interpretation of the Medicare statute. The constitutional challenges The Regents has made to the regulation must also fail.

Agency regulation of social welfare programs such as the Medicare statute is given a broad degree of discretion and need not apply with any mathematical degree of precision in order to comply with the constitutional requirements of due process. While an Establishment Clause issue is raised by the religiously affiliated provider exception contained in Regulation 405.419, The Regents failure to illustrate how this exception caused it any sort of economic harm requires the Court to find that The Regents has no standing to assert this challenge. Therefore, the Provider Reimbursement Review Board's determination on The Regents claims for reimbursement of related party interest expenses must be affirmed.

Finding no disputed issue of material fact in this matter, and that Defendant is entitled to judgment as a matter of law, the Court hereby **GRANTS** Defendant's Cross–Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment. Defendant's Statement of Uncontroverted Facts and Conclusions of Law is hereby incorporated into this Order.

**IT IS SO ORDERED.**