**IN–HOME HEALTH CARE SERVICE OF SUBURBAN CHICAGO NORTH, INC., Plaintiff,**

v.

**Patricia R. HARRIS, In Her Official Capacity As Secretary of Health, Education and Welfare, Defendant.**

No. 80 C 2176.

United States District Court, N. D. Illinois, E. D.

March 12, 1981.

Michael I. Hyman, Lawrence A. Manson, Wood, Lucksinger & Epstein, Chicago, Ill., for plaintiff.

Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff, In-Home Health Care Service of Suburban Chicago North, Inc. ("In-Home Health"), an Illinois not-for-profit corporation, seeks review of a determination of the Provider Reimbursement Board ("Board"), which was affirmed by the Secretary of Health and Human Services ("Secretary"), denying partial reimbursement under Part A of the Medicare program, 42 U.S.C. § 1395 *et seq.*, for certain costs of electronic data processing and financial consulting services purchased in fiscal 1976. Final decisions of the Secretary or the Board are subject to judicial review pursuant to 42 U.S.C. § 1395*oo* (f) in accordance with the relevant provisions of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* Accordingly, we must determine whether the Secretary's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A) and (E). *Lodi Memorial Hospital v. Califano,* 451 F.Supp. 651, 654 (D.D.C. 1978); *Doctors Hospital, Inc. v. Califano,* 459 F.Supp. 201, 205 (D.D.C.1978).[1]

▮ Medicare, 42 U.S.C. 1395 *et seq.*, is a national program of health insurance for the aged and disabled completely financed and administered by the federal government. The Congressional statutory scheme envisions reimbursement of Medicare providers, including home health agencies such as In-Home Health, the plaintiff herein, for the reasonable cost of services rendered to Medicare beneficiaries. Defining the boundaries of "reasonable cost" can be a frustrating task. As provided in 42 U.S.C. § 1395x(v)(1)(A):

> The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used ... in determining such costs....

Thus, the "reasonable cost" comprises the upper limit of permissible reimbursement to Medicare providers under the statute. *American Medical Association v. Mathews,* 429 F.Supp. 1179, 1193 (N.D.Ill.1977). While the provider's actual costs are taken into account, the Secretary is explicitly empowered to pare unnecessary costs from the actual costs incurred for purposes of determining reimbursement. As Judge Marshall wrote in *American Medical Association, supra,* after a thorough review of the Medicare and Medicaid statutory framework:

> The obvious conclusion is that § 1395x(v)(1)(A) does not require reimbursement of all actual costs. Rather, it limits reimbursement to a level no higher than actual costs and sets broad standards for the subtraction of excessive and unnecessary costs from that figure.

---

1. The substantiality of the evidence must be determined after a thorough review of the whole record, taking into account anything that fairly detracts from its weight. *Indiana Harbor Belt Railroad Company v. General American Transportation Corporation,* 577 F.2d 394, 397 (7th Cir. 1978). As Judge Gerhard A. Gesell said in a case involving a challenge to cost reimbursement under the Medicare program:

> For purposes of judicial review, "substantial evidence" means something less than the weight of the evidence. *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). It amounts to such relevant evidence as a rea-

sonable mind might accept as adequate to support the conclusion reached. *Id.,* at 620, 86 S.Ct. 1018, 1027. The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's decision from being supported by substantial evidence. *Id.* This standard is intended to free "the reviewing courts of the time-consuming and difficult task of weighing the evidence," to give "proper respect to the expertise of the administrative tribunal" and to help "promote the uniform application of the statute." *Id.*

*Doctors Hospital, Inc. v. Califano,* 459 F.Supp. 201, 205 (D.D.C.1978).

429 F.Supp. at 1197. The Secretary has promulgated regulations that attempt to define the components of reasonable cost. 42 C.F.R. § 405.451 provides that "[r]easonable cost includes all necessary and proper costs incurred in rendering the services...." Necessary and proper costs, in turn, are defined as those "costs which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities."

Needless to say, neither the statute nor regulations promulgated thereunder contain a clear and concise test for determining reimbursable costs under the Medicare program. It is thus not surprising that the courts have given considerable deference to administrative agencies charged with implementing the program in order to promote uniformity and consistency. *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Good Samaritan Hospital, Corvallis v. Mathews*, 609 F.2d 949, 955 (9th Cir. 1979). Judicial review of agency decisions in accordance with the Administrative Procedure Act, 5 U.S.C. § 706, as required by 42 U.S.C. § 1395*oo*(f) was "designed to free us from the time consuming and difficult task of weighing the evidence." *Good Samaritan Hospital, supra,* 609 F.2d at 955. Thus, the fact that we might disagree with the Secretary's conclusions or those of her agents, or that two inconsistent conclusions might be drawn from the record, does not prevent the agency's findings from being supported by substantial evidence. *Consolo v. Federal Maritime Commission, supra; Good Samaritan Hospital, Corvallis v. Mathews, supra.* With these general principles in mind, we proceed to an examination of the facts and record in the case at bar.

On December 31, 1979, following a three-day hearing, the Provider Reimbursement Review Board sustained the findings of the fiscal intermediary, Home Health Service Corporation, that $8,525 of In-Home Health's financial consulting costs and $11,-586 of its electronic data processing costs for fiscal 1976 were unreimbursable because they were not reasonable and necessary within the meaning of 42 C.F.R. § 405.451. The Secretary affirmed the Board's decision on March 4, 1980, and In-Home Health petitioned for judicial review in May, 1980. In-Home Health contends that the determination of the Board and the Secretary was arbitrary, capricious, and unsupported by substantial evidence, and that the fiscal intermediary improperly applied unpublished internal reasonable cost guidelines promulgated in 1977 retroactively in disallowing portions of its 1976 costs in violation of the due process clause of the Fifth Amendment. For the reasons set forth below, the Court finds that the determinations of the Board and the Secretary are amply supported by substantial evidence in the record considered as a whole.

*Cost of Consulting Services*

In November, 1975, In-Home Health engaged Medipatient Home Health Care Consultants, Inc. ("Medipatient") to assist its executive director, Mr. Charles Laff, in the organization and management of In-Home Health during its first year of operation. The seven-year contract executed by In-Home Health and Medipatient provided that Medipatient would provide a variety of services, including on-site inspections, policy and procedural manual revisions, professional advice and training, advice concerning legal and regulatory matters, analysis of financial statements, and assistance in cash management and budget preparation for a flat fee of $1,000 per month or $12,000 a year. In reviewing In-Home Health's consulting costs, the fiscal intermediary first determined that a reasonable rate for consulting services was $50 per hour, the cheapest rate available in the Chicago area in 1976. It thus disallowed as unreasonable $1,550 of the $12,000 fee, the amount in excess of $50 per hour for the 209 total hours provided by Medipatient.[2] The intermediary then disallowed 139½ hours of financial consultation and budget preparation as unnecessary costs because Charles Laff,

2. Medipatient provided 209 hours of consulting time for its fee of $12,000 or $57 per hour.

In-Home Health's executive director, was a skilled certified public accountant who could have handled such matters himself without the assistance of a consultant. Thus, the intermediary only approved $3,475 for consulting costs payable to Medipatient for fiscal 1976.

The evidence adduced during the three days of hearings before the Board reveals that Laff was a certified public accountant with eight years of experience as comptroller, treasurer, and an ex-officio member of the board of directors of Budget Rent-A-Car Corporation from 1965 through 1973. Laff was also vice-president for financial affairs of Intercontinental Services, Inc., a holding company that made investments in the health care field, between 1973 and 1975. While he was affiliated with Intercontinental, Laff participated in the operations of its subsidiary, Claims Processing Corporation, which provided billing and bookkeeping services to hospitals and clinics, and he explored the possibility of Intercontinental's acquisition of Unihealth Services Corporation, a consulting and data processing firm serving the health care industry. When that potential acquisition fell through, Laff participated in the creation of Medipatient as a subsidiary of Intercontinental in 1975.

During 1976, while he was running In-Home Health as its executive director, Laff "moonlighted" as a financial consultant for Medipatient and did financial restructuring and budget preparation for several Medipatient clients: In-Home Health Care Service of Suburban Chicago, West; Home Health Care Service of Chicago, South; and Home Health Care Service of Chicago, North. Laff received $10,000 for 200 hours of consulting work during this period, or $50 per hour. Although Laff testified that his outside consulting activities had nothing to do with In-Home Health's need for Medipatient's financial consulting services, it was not unreasonable for the Board or the Secretary to find that Laff was sufficiently well versed in financial and budgetary affairs to forego the services of a consultant as unnecessary in such circumstances.[3] The Board also did not err in concluding that a seven-year contract for such services was of an unreasonable duration.

Similarly, it was not unreasonable for the Board or the Secretary to decide that $50 per hour was a reasonable rate of reimbursement for consulting services compared with the $57 per hour that In-Home Health effectively paid Medipatient for 209 hours of work in 1976. At least one consulting firm located in the Chicago area, National Health Delivery Systems, operated with a fee structure of $50 per hour and though Laff testified and the Board so found that he did not hire that particular firm for valid reasons, the $50 rate clearly was not unreasonably low. It is worth noting that Laff himself was compensated at the rate of $50 per hour for his outside consulting work for Medipatient in 1976.[4]

Moreover, as noted earlier, a Medicare provider need not be reimbursed for all the actual costs incurred so long as the Secretary can make a reasonable and principled argument in favor of the disallowance of unnecessary costs. *American Medical Association v. Mathews, supra.* The Secretary's determinations in this case are supported by substantial evidence. The Court also notes that the Secretary and other courts have looked with particular scrutiny upon costs incurred that are less

---

3. In reaching this conclusion, this Court places no reliance upon the Secretary's attempt to support the decision of the Board upon the "captive agency" or "related organization" theories which were not relied upon by that body in making its findings or ultimate determinations. As In-Home Health correctly notes, it would be improper for this Court to engage in *post hoc* rationalizations in support of agency action which were not considered and relied upon by the agency in making its determina-

tion. *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962). Thus, Laff's relationship with Jules Lederer, president of Medipatient, or Lederer's asserted influence over Laff and the home health industry in Chicago plays no part in this Court's decision.

4. The allegations regarding the retroactive application of the $50 per hour reimbursement limit are considered later in this opinion.

directly related to the care of Medicare beneficiaries. 42 C.F.R. § 405.451 seems to require such analysis in its opening statement that "[a]ll payments to providers of services must be based on the reasonable cost of services ... *and related to the care of beneficiaries.*" (our emphasis). *See St. Francis Hospital, Inc. v. Califano,* 479 F.Supp. 761, 764 (D.D.C.1979). Accordingly, we might be less inclined to uphold the Secretary's position in the instant case with regard to the reasonableness of the $50 per hour fee if the disallowance was more directly related to patient care than to financial and budgetary analysis.

*Cost of Electronic Data Processing*

During 1976, In-Home Health also contracted with Medipatient for electronic data processing services in connection with the agency's mechanized billing needs. Medipatient, in turn, contracted with Diversified Computer Applications, Inc. ("DCA"), a California corporation, for the provision of the basic computer reports to its client home health agencies. Medipatient charged In-Home Health $1.50 per patient visit and paid DCA $.36 per patient visit plus a flat $95 monthly fee. The Board found that individual home health agencies could deal directly with DCA and avoid the increased costs associated with a middleman such as Medipatient. The Board and the Secretary thus denied In-Home Health reimbursement in the amount over and above the cost that would have been incurred had the agency dealt directly with DCA on the grounds that the additional costs were not reasonable and necessary within the meaning of 42 C.F.R. § 405.451 and that In-Home Health had not been a "prudent buyer" of services as defined in the Provider Reimbursement Manual § 2103.

■ In-Home Health contends that its decision to utilize the services of Medipatient rather than deal directly with DCA was supported by sound business judgment. Charles Laff testified that since Medipatient was located in Chicago while DCA was a California firm, he could deal personally with Medipatient personnel if problems

arose. He also testified that he had heard that DCA provided a poor quality product from two sources and that he knew that Medipatient personnel were familiar with Medicare procedures. Finally, unlike DCA, Medipatient personnel screened the data for errors both before and after it was fed into the computer to assure that the billing and statistical reports were clean when they were submitted to the fiscal intermediary for reimbursement determinations. Medipatient also provided other statistical breakdowns of financial and patient management data. However, the record also indicates that Medipatient clients dealt directly with DCA in California over the telephone which DCA answered "Medipatient" as a service to Medipatient clients, substantially reducing the purported advantages of personal contact derived from engaging the Chicago-based Medipatient. Moreover, the Board did not act unreasonably in finding that the additional screening and other statistical services provided by Medipatient did not justify the large difference in price when compared to the services available from DCA at a substantial discount. As was the case with regard to the consulting services discussed above, the Secretary and the Board acted within their respective authority in denying reimbursement for that portion of the provider's costs actually incurred which were found to be not reasonable and necessary within the meaning of the statute and regulation. The determinations are supported by substantial evidence in the record considered as a whole and they are entitled to considerable deference. *Udall v. Tallman, supra; Good Samaritan Hospital, Corvallis v. Mathews, supra.*

*Alleged Retroactive Application of Unpublished Guidelines*

■ In-Home Health contends that the fiscal intermediary charged with reviewing provider reimbursement in the Chicago area on behalf of the Secretary retroactively applied unpublished guidelines formulated in 1977 to disallow portions of the financial consulting costs and electronic data processing costs incurred by In-Home Health dur-

ing fiscal 1976. The crux of the argument put forth by In-Home Health is that but for these unpublished guidelines which set the maximum allowable reimbursement for consulting services at $50 per hour and established the DCA charge for data processing as the only acceptable rate for such services, In-Home Health would have received full reimbursement for the actual costs of purchasing these services from Medipatient in 1976. Thus, In-Home Health maintains that it had a justifiable expectation in receiving full reimbursement for its actual costs in 1976 and the action of the intermediary, sustained by the Board and the Secretary, in disallowing a portion of these costs is a retroactive application of interpretative guidelines in violation of the due process clause of the Fifth Amendment.

In-Home Health improperly assumes, however, that the reasonable cost formula mandated by 42 U.S.C. § 1395x(v)(1)(A) and the regulation promulgated thereunder, 42 C.F.R. § 405.451, would have guaranteed automatic reimbursement of the actual costs it incurred in 1976. While the fiscal intermediary had not indicated disapproval of In-Home Health's consulting or data processing costs prior to the re-evaluation of home health agency reimbursement procedures in 1977, the tightening of reimbursement policy in that year did not represent a radical break with prior practice as In-Home Health seems to contend. The standard of reasonable and necessary costs applied by the Board and the Secretary was not a new standard and In-Home Health could not be justified in relying upon the absence of a set policy on the intermediary level to justify an expectation in "business as usual" with respect to reimbursement of home health agencies. We are not confronted with a situation such as occurred in *Daughters of Miriam Centers for the Aged v. Mathews*, 590 F.2d 1250 (3d Cir. 1978), heavily relied upon by In-Home Health, in which an interpretive rule of the administrative agency retroactively applied a regulation that severely limited the use of accelerated depreciation methods by nursing homes for purposes of determining reimbursable reasonable costs. In the case at

bar, the fiscal intermediary merely brought its practice into line with the existing federal statutory and regulatory framework of which the provider was well aware.

▪ Even if this Court were to consider the application of the 1977 unpublished guidelines to 1976 costs as a retroactive measure, it is clear that any such change "often [has] economic consequences which may be inconsistent with a party's reasonable expectations ... [but] [s]uch inconsistencies are not equivalent to unconstitutionality." *Springdale Convalescent Center v. Mathews*, 545 F.2d 943, 955 (5th Cir. 1977); *Illinois Council for Long-Term Care v. Miller*, 503 F.Supp. 1091, 1098 (N.D.Ill.1980). *See also Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976); *South Terminal Corp. v. Environmental Protection Agency*, 504 F.2d 646, 678 (1st Cir. 1974). After balancing the public interests advanced by maintaining strict cost controls in the administration of the Medicare program against In-Home Health's interest in being reimbursed for its actual reasonable costs so long as they are necessary to the provision of services to Medicare beneficiaries, this Court concludes that the denial of partial reimbursement for certain costs in the instant case is not unlawful simply because it may have upset "otherwise settled expectations." *Usery v. Turner Elkhorn Mining, supra*, 428 U.S. at 16, 96 S.Ct. at 2892.

Accordingly, plaintiff's motion to reverse the decision of the Secretary is denied and defendant's motion for summary judgment is granted. It is so ordered.